IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

In re:

**ALLIED HOLDINGS, INC.,** *et al.,*

**1:06-cv-1416-WSD**

## OPINION AND ORDER

This matter is before the Court on the Teamsters'[1] ("Appellants" or "the Teamsters") Motion for Leave to Appeal. (Mot. for Appeal [2].)

## I.    BACKGROUND

This matter arises from Chapter 11 bankruptcy proceedings pending in the Bankruptcy Court for the Northern District of Georgia, where Allied Holdings, Inc. and affiliated debtors (collectively "Allied" or "Appellees") are debtors in possession. Allied is a specialized trucking company whose main business is

---

[1]Appellants in this action consist of The Teamsters National Automobile Transportation Industry Negotiating Committee (TNATINC) and numerous local unions, all affiliated with the International Brotherhood of Teamsters.

transporting vehicles, principally new cars produced by automobile manufacturers. It is the largest transporter of new motor vehicles in North America. The Teamsters are the collective bargaining representatives for approximately 4800 of Allied's employees. A single collective bargaining agreement ("CBA"), the National Master Automobile Transporters Agreement ("NMATA"), covers Allied's union employees.

On July 31, 2005, Allied commenced its Chapter 11 bankruptcy reorganization. Shortly after the case was filed, Allied obtained post-petition, also known as debtor-in-possession ("DIP"), financing from a consortium of lenders. In connection with the DIP financing, Allied provided projections of its expected results of operations during the eighteen-month term of the loan. It also agreed to financial covenants regarding the minimum earnings level Allied would maintain on a rolling twelve month basis.

In early 2006, Allied realized it was unable to meet its financial projections, and had breached the financial covenants it made in connection with its DIP financing. Allied determined that the amount it could borrow under the DIP financing, assuming the financing was not terminated by default, was insufficient for it to operate through July 2006.

Accordingly, in March 2006, Allied proposed, pursuant to 11 U.S.C. § 1113(b), to negotiate with the Teamsters regarding changes in the parties' collective bargaining agreement.[2]  The negotiations were not immediately successful, and faced with Allied's perceived cash flow shortfall in July, on April 13, 2006, Allied filed an emergency motion for interim relief from its wage payment obligation to its Teamsters employees.[3]  In its emergency motion, Allied claimed that a two month wage reduction of 10%, effective until June 30, 2006, was required to preserve its viability and thus avoid irreparable harm to the estate. Allied also asked the court for permission to defer a 2% wage increase and cost of living adjustment that were scheduled to go into effect on June 1, 2006.  Allied expected the interim relief to save it $4 million over the two-month period.  These

_____

[2] Under § 1113(b), a debtor may not unilaterally breach a collective bargaining agreement and must meet specific procedural requirements to change or reject a collective bargaining agreement.

[3] "Section 1113(e) of the Bankruptcy Code, 11 U.S.C. § 1113(e), states that the bankruptcy court, "after notice and a hearing, may authorize the trustee to implement interim changes in the terms, conditions, wages, benefits, or work rules provided by a collective bargaining agreement." Hunt v. Hawthorne Assocs., 119 F.3d 888, 895 n.20 (11th Cir. 1997).  The bankruptcy court may authorize such measures only if they occur "during a period when the collective bargaining agreement continues in effect," and "if such measures are essential to the continuation of the debtor's business, or in order to avoid irreparable damage to the estate." Id.

-3-

savings were to be combined with a $1 million savings it intended to obtain from a reduction in non-union employee compensation.  In April 2006, Allied and its DIP lenders agreed on an amendment to their financing agreement in which the DIP lenders would provide Allied with an advance of $5 million.  The maturity date for the advance could be extended by one month if, among other things, Allied obtained the interim relief it sought in its § 1113(e) emergency motion.

On April 26-27, 2006, the bankruptcy court held a hearing on the emergency motion.  Allied presented evidence intended to demonstrate that it required emergency relief for it to continue operating past July 30, 2006.  The Teamsters argued that Allied's financial evidence made improper assumptions and was insufficient to grant the interim relief requested.  After hearing Allied's evidence, the bankruptcy court allowed a representative from the DIP lenders to present its position regarding the DIP financing.  On May 1, 2006, the bankruptcy court found that Allied had satisfied the requirements of § 1113(e) and granted Allied's request for interim relief.

On June 13, 2006, the Teamsters filed this Motion for Leave to Appeal the bankruptcy court's order.  Appellants argue that it was improper for the

bankruptcy court to enter interim relief under § 1113(e) because Allied had not filed

an application to reject the collective bargaining agreement pursuant to

§ 1113(b) of the Bankruptcy Code.  Appellants argue the bankruptcy court's order

was a final order appealable as of right, and if not, this Court should grant the

Teamsters' leave to file an interlocutory appeal.  The initial question before the

Court is whether the bankruptcy court's interim order is a final order or one which

the Court in its discretion should allow to be appealed.  The Court finds the order

is not final and declines to exercise its discretion to allow an interlocutory appeal.

## II.   DISCUSSION

### a.   *Law of Collective Bargaining Agreements–11 U.S.C. § 1113*

Bankruptcy Code 11 U.S.C. § 1113 allows a debtor to reject collective

bargaining agreements during bankruptcy but also provides protection to those

employees covered by a collective bargaining agreement proposed to be rejected.

Under § 1113, a bankruptcy trustee may not "unilaterally terminate or alter any

provisions of a collective bargaining agreement prior to compliance with the

provisions of [§ 1113]."  11 U.S.C. § 1113(f).  The statute requires that "[t]he

debtor in possession, or the trustee . . . may assume or reject a collective

bargaining agreement only in accordance with [the] provisions [of § 1113.]"

-5-

11 U.S.C. § 1113(a).  The section sets out a required process a debtor must follow
to reject or modify a collective bargaining agreement:

> § 1113(b)(1)--Subsequent to filing a petition [of
> bankruptcy] and prior to filing an application seeking
> rejection of a collective bargaining agreement, the debtor
> in possession or trustee (hereinafter in this section
> "trustee" shall include a debtor in possession), shall–
>
> (A) make a proposal to the authorized
> representative of the employees covered by such
> agreement . . . which provides for those necessary
> modifications in the employees benefits and protections
> that are necessary to permit the reorganization of the
> debtor and assures that all creditors, the debtor and all of
> the affected parties are treated fairly and equitably; and
>
> (B) provide, subject to subsection (d)(3), the
> representative of the employees with such relevant
> information as is necessary to evaluate the proposal.
>
> (2) During the period beginning on the date of the
> making of a proposal provided for in paragraph (1) and
> ending on the date of the hearing provided for in
> subsection (d)(1), the trustee shall meet, at reasonable
> times, with the authorized representative to confer in
> good faith in attempting to reach mutually satisfactory
> modifications of such agreement.

11 U.S.C. § 1113(b).  Subsection (d) further requires that after the filing of an
application for rejection, the Court must schedule a hearing where "[a]ll interested
parties may appear and be heard"  11 U.S.C. § 1113(d)(1).

The court must rule on the application for rejection within 30 days after the

hearing, and the court may enter protective orders to prevent disclosure of

information provided by the debtor to the authorized representative of the

employees.  11 U.S.C. § 1113(d)(2), (3).

Section 1113(e) specifically provides for emergency interim relief in

appropriate circumstances:

> If during a period when the collective bargaining
> agreement continues in effect, and if essential to the
> continuation of the debtor's business, or in order to avoid
> irreparable damage to the estate, the court, after notice
> and a hearing, may authorize the trustee to implement
> interim changes in the terms, conditions, wages, benefits,
> or work rules provided by a collective bargaining
> agreement. . . . The implementation of such interim
> changes shall not render the application for rejection
> moot.

11 U.S.C. § 1113(e).

b.    *Finality of Interim Order*

A final order of a bankruptcy court is appealable as of right.  The Teamsters

contend that the bankruptcy court's May 1, 2006 order under § 1113(e) is

"arguably" final and, therefore, appealable to this Court.  They argue that because

Allied has not applied to reject the collective bargaining agreement pursuant to

-7-

§ 1113(d), the order will not be subsumed in any future order regarding rejection of the collective bargaining agreement.  That is, the Teamsters argue that as a practical matter, the May 1, 2006 order may never become final or incorporated in a final order, and the interim relief should be appealable now because it is "effectively" final.

District courts have "jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges."  In re Charter, 778 F.2d 617, 621 ( 11th Cir. 1985) (citing 28 U.S.C.A. § 158(a)).  A final decision is generally one which "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."  Anastasia Cruises, Inc. v. Exxon Mobil Corp., 331 F.3d 1257, 1259 (11th Cir. 2003).  "In bankruptcy proceedings, it is generally the particular adversary proceeding or controversy that must have been finally resolved rather than the entire bankruptcy litigation."  Id.  Courts "take a more liberal view of what constitutes a separate dispute for purposes of appeal in bankruptcy cases, [but] the separate dispute being assessed must have been finally resolved and leave nothing more for the bankruptcy court to do."  In re Charter, 778 F.2d at 621.  The Eleventh Circuit has explained:

> The statutory requirement of finality is a flexible concept, grounded in the practicalities of the situation. This accommodative approach is vital in the context of bankruptcy.  Viewed realistically, a bankruptcy case is simply an aggregation of controversies, many of which would constitute individual lawsuits had a bankruptcy petition never been filed.  While the goal of the bankruptcy process is to bring all present and potential contestants together and decide all the claims at the same time, a truly simultaneous resolution is impossible. Finality of bankruptcy orders cannot be limited to the last order concluding the bankruptcy case as a whole.  Any order within a bankruptcy case which concludes a particular adversary proceeding should be deemed final and reviewable.

Jove Engineering, Inc. v. I.R.S., 92 F.3d 1539, 1548 (11th Cir. 1996).

The parties acknowledge the Eleventh Circuit has not specifically addressed whether an interim order under § 1113(e) constitutes a final order that may be appealed as of right.  The Teamsters argue that the interim order granting emergency relief "effectively terminates this litigation" because "[t]here is no other motion pending concerning the collective bargaining agreement, and while the Debtor may file one, it is not obligated to do so and may never do so."  (Mot. for Appeal, at 14.)  Allied argues, citing In re Landmark Hotel & Casino v. Local Joint Exec. Bd., 872 F.2d 857 (9th Cir. 1989), that such interim orders are not final and thus not appealable as of right.

In re Landmark provides a helpful discussion of the finality of interim orders under § 1113(e).  In that case, Landmark filed a Chapter 11 bankruptcy petition, and shortly thereafter attempted to negotiate changes in its collective bargaining agreements with the representatives of its union employees.  Id. at 858.  Unable to reach an agreement with the unions, Landmark filed an application for authorization to reject the collective bargaining agreements.  The bankruptcy court rejected Landmark's first proposal, and after renegotiating with the unions unsuccessfully, Landmark filed another application to reject.  The bankruptcy court, after a hearing, did not authorize or deny the requested rejection, but granted interim relief to Landmark under § 1113(e).

The interim relief order allowed Landmark to, among other things, reduce wages and eliminate future wage increases for its union employees.  Id. at 859.  The order required Landmark to contribute to the unions' health and welfare plans and required the unions to arbitrate certain issues with their other employers.  Landmark, dissatisfied with the interim relief, appealed the order to the Bankruptcy Appellate Panel ("BAP").  It argued that it met all the requirements for rejection of the collective bargaining agreements at issue.  While the appeal was pending, the bankruptcy court continued to address the collective bargaining agreements and

-10-

several times extended the duration of the interim relief order.  The bankruptcy court eventually entered an order authorizing rejection of the agreements.  Neither side appealed the order authorizing rejection.  The BAP ultimately upheld the bankruptcy court's interim relief order.  Landmark appealed the BAP's decision to the Ninth Circuit, seeking an order instructing the bankruptcy court to reject the collective bargaining agreements retroactively to the date it believed the requirements for rejection were met.

The Ninth Circuit addressed whether the interim order was an appealable final order, reasoning that "[t]o the extent that an interim relief order under § 1113(e) addresses any 'discrete issue,' we believe that it addresses the issue whether a debtor must abide by all, some portion, or none of the terms of its collective bargaining agreements after the filing of a bankruptcy petition."  Id. at 860.  The court held that the interim order was not a final order for four primary reasons.

First, the Ninth Circuit stated that § 1113(e) "expressly permits a debtor to continue to seek authority to reject a collective bargaining agreement even after a bankruptcy court has granted interim relief," and this would "unavoidably . . . alter or terminate the interim relief."  Id.  Second, the Court reasoned that § 1113(e)

"seems to permit a court to order further interim relief if necessary" which would also alter the initial interim relief allowed.  Id.  Third, the court noted that "even if an interim relief order makes rejection contingent on the occurrence of an event, as in this case, the order is not a final determination of all issues because whether the event has occurred may be contested."  Fourth, the court stated that § 1113(e) orders are analogous to those appointing interim trustees under 11 U.S.C. § 701(a) and those awarding interim compensation under § 331, and courts of appeals have rejected appeals of these orders for lack of finality.  The court thus held "a debtor may not immediately appeal . . . the judgment of the BAP with respect to an interim relief order under § 1113(e).  To obtain review here, the debtor must wait until the bankruptcy court has rendered its ultimate order on the rejection issue.  Only at that point will the bankruptcy court have determined finally all of the relevant issues." Id. at 860-61.

In re Ionsphere Clubs, Inc., the Southern District of New York reached the opposite conclusion, but noted that the "Ninth Circuit appears to follow a more rigid rule regarding the finality of a bankruptcy court's orders."  139 B.R. 772, 778 n.4 (S.D.N.Y. 1992).  In re Ionsphere, Eastern airlines and its affiliate filed for Chapter 11 bankruptcy on March 9, 1989.  Id. at 775.  Eastern filed an application

under § 1113 to reject the collective bargaining agreement it had with ALPA, the union and authorized collective bargaining representative for the airline pilots Eastern employed.  Eastern subsequently withdrew its motion to reject.  The bankruptcy trustee then filed a motion under § 1113(e) for interim relief from the collective bargaining agreement.  The bankruptcy judge granted the emergency motion and authorized interim modifications to the collective bargaining agreement. The interim order was issued when there was no pending application for permanent modification or rejection of the collective bargaining agreement.  About a month later, Eastern requested modifications to the interim order to slightly raise pilots' salaries but spread out over a longer period of time.  The bankruptcy court granted this motion.  ALPA appealed and argued that the interim order was an appealable final order.  Eastern argued the order could not be appealed because the relief was interim.

The court stated that "while the bankruptcy court characterized the § 1113(e) order as interim, the order is of indefinite duration."  It concluded that "the portion of the bankruptcy court's order authorizing § 1113(e) modifications was final and appealable as of right."  Id. at 778.  The court distinguished Landmark from the case before it, reasoning that in Landmark, "an application for rejection of the

collective bargaining agreement was pending at the time the bankruptcy court

authorized interim changes pursuant to § 1113(e), the interim relief order was of

limited duration, and an order authorizing rejection was ultimately issued." Id. at

778 n.4.

      Although the facts before this Court are different from those in both

Landmark and Ionsphere, Landmark is more persuasive authority here.  Like in

Landmark, the interim order in this case was for a limited period of time–60 days.[4]

The Court agrees with the Landmark court that an interim order under § 1113(e) is

not appealable as a final order because the terms of the statute allow for changes to

---

[4] That Ionosphere is not persuasive here is underscored by its discussion of
Beckley Coal Mining.  See Beckley Coal Mining Co. v. United Mine Workers, 98
B.R. 690 (D. De. 1988).  The Ionosphere court noted that the district court in
Beckley held that a "pending rejection application was not a prerequisite to
§ 1113(e) relief" because to impose that requirement would "deprive the
bankruptcy court of sufficient flexibility to provide the debtor in possession
temporary economic relief . . . to preserve the business, if possible, for the benefit
of all."  In re Ionosphere, 139 B.R. at 780.  The Ionosphere court noted that, in the
case before it, there "was no danger of imminent liquidation at the time that Eastern
filed its motion for interim relief," and thus distinguished the Beckley case.  It is
also significant to note the Ionosphere court issued its opinion "without deciding
whether § 1113(e) relief should ever be available prior to the filing of an application
for permanent relief."  Id.  The case here is similar to Beckley because Allied
claimed in its motion under § 1113(e) that without any relief, the company could not
continue to operate through July 2006.

-14-

be made to the order in the future.  It permits a debtor to continue to seek authority

to reject a collective bargaining agreement even after a bankruptcy court has granted

interim relief, and the provision "seems to permit a court to order further interim

relief if necessary."  In the absence of express precedent from the Eleventh Circuit

on this issue, the Court finds that the bankruptcy court's interim order under §

1113(e) is not a final, appealable order.

      *c.*     *Standard for Granting an Interlocutory Appeal*

     The Court next considers whether to grant an interlocutory appeal.  "Under

28 U.S.C. § 158(a), district courts have discretion to grant leave to appeal from

interlocutory bankruptcy orders.  Because section 158(a) contains no guidelines as

to the exercise of this discretion, district courts look to circuit court standards

governing interlocutory appeals under 28 U.S.C. § 1292(b)."  In re E.H. Mann,

Inc., 118 B.R. 895, 897 (S.D. Ga. 1990); see also In re Charter Co., 778 F.2d 617,

620 n.5 (11th Cir. 1985) (noting that because the bankruptcy statutes do "not

provide the district courts any criteria for determining whether to exercise their

discretionary authority to grant leave to appeal," the court looked to 28 U.S.C.

§ 1292(b) to decide whether to grant an interlocutory appeal from a bankruptcy

decision); In re Auto Dealer Servs., Inc., 81 B.R. 94, 96 (M.D. Fla. 1987) (applying

the standards in 28 U.S.C. § 1292(b) to determine whether a district court should

entertain an interlocutory appeal from a bankruptcy court and noting the decision is

"clearly within each court's discretion"); 6-117 Collier Bankruptcy Practice Guide

P 117.04 ("District courts and bankruptcy appellate panels, in determining whether

leave will be granted to appeal from an interlocutory order, generally have relied on

the standard set forth in 28 U.S.C. § 1292(b) governing appeals of interlocutory

district court orders to the court of appeals.").[5]

       "The standards set forth are: (1) whether the bankruptcy court's decision

involves a controlling question of law, (2) as to which there is substantial ground

for difference of opinion and (3) where an immediate appeal from the order may

---

       [5] Appellants argue that the standard under 28 U.S.C. § 1292(b) does not
apply.  Instead, they argue that the Eleventh Circuit has held that a motion for leave
to appeal from a bankruptcy court is "akin to review of a motion for class
certification under Rule 23(f)."  (Mot. for Appeal, at 11.)  The Court disagrees.
The cases cited by Appellants do not stand for this proposition.  In <u>Chrysler Fin.
Corp. v. Powe</u>, 312 F.3d 1241 (11th Cir. Cir. 2002), the court reviewed a
bankruptcy court order granting class certification, and the issue was whether the
court of appeals could directly review the order under Rule 23(f).  In <u>Prado
Steiman v. Bush</u>, 221 F.3d 1266 (11th Cir. Cir. 2000), the court considered an
interlocutory appeal from a class certification that was not a bankruptcy case.
These cases do not hold that a district court must apply or should consider
applying the standards of Rule 23(f) in deciding whether to grant an interlocutory
appeal from a bankruptcy court order.

materially advance the ultimate termination of the litigation." In re Auto Dealer

Servs., Inc., 81 B.R. at 96 (citing 28 U.S.C. § 1292(b)).

      The Eleventh Circuit has emphasized the limited scope of § 1292(b):

> The appeal from interlocutory orders thus provided
> should and will be used only in exceptional cases where a
> decision of the appeal may avoid protracted and
> expensive litigation, . . . where a question which would be
> dispositive of the litigation is raised and there is serious
> doubt as to how it should be decided. . . . It is not
> thought that district judges would grant the certificate in
> ordinary litigation which could otherwise be promptly
> disposed of or that mere question as to the correctness of
> the ruling would prompt the granting of the certificate.

McFarlin v. Conseco Servs., 381 F.3d 1251, 1257 (11th Cir. 2004) (quoting the

report from the Judicial Conference of the United States Courts proposing the

addition of § 1292(b)).

      The Teamsters set forth three primary issues for appeal to this Court: 1)

whether the bankruptcy court erred in permitting a motion for interim relief under

§ 1113(e) when there was no pending application to reject the CBA under

§ 1113(b); 2) whether it was proper to allow an agent for the DIP lenders to present

its position on the case at the close of the § 1113(e) hearing; and 3) whether the

bankruptcy court properly applied the standards and burden of proof required

under § 1113(e).[6]  The Court considers whether the Teamsters have presented a

sufficient basis to allow an interlocutory appeal on each of these grounds.

> d.      *The Right to Obtain Interim Relief Under § 1113(e) without Moving for Rejection of the Collective Bargaining Agreement*

The first question the Court must answer is whether the bankruptcy court's

decision to allow interim relief without a pending application to reject the collective

bargaining agreement involves a controlling question of law.  Under 28 U.S.C. §

1292(b), a "question of law" is a "question of the meaning of a statutory or

constitutional provision, regulation, or common law doctrine."  McFarlin, 381 F.3d

---

[6] In their motion for leave to appeal, Appellants list three additional bases for appeal.  They are:  4) whether it was proper to permit Allied "to breach their collective bargaining agreement for the benefit of the DIP lenders, by imposing wage cuts to pay interest on the lenders loans;" 5) whether it was proper to permit Allied to "breach their collective bargaining agreement for the benefit of executives, managers and restructuring professionals, by imposing wage cuts; and 6) whether it was error for the bankruptcy court to refuse to supplement the record with an offer of proof presented by the Teamsters after the hearing closed.  (Mot. for Appeal, at 9-10.)  The Teamsters do not, however, discuss or elaborate on these bases for appeal.  The Court cannot find any distinct legal issue for appeal as to Questions 4 and 5.  They merely duplicate, albeit in a different form, the main issue in this interlocutory appeal -- whether Allied is permitted to obtain interim relief under § 1113(e) when it does not have a pending application to reject the collective bargaining agreement.

at 1258.  Neither party appears to dispute that this issue is a question of statutory

interpretation, and therefore a question of controlling law.

Whether this question of law is one as to which there is substantial ground

for difference of opinion is the primary dispute between the parties.  To determine

whether there is substantial ground for difference of opinion, the court must

evaluate if "there is substantial dispute about the correctness of any of the pure law

premises the district court actually applied in its reasoning leading to the order

sought to be appealed."  Id. at 1259.  The Teamsters argue that almost "all

appellate authority on this question holds that an 'interim' relief proceeding under §

1113(e) may only be filed in the context of an ongoing application to reject a

collective bargaining agreement."  (Mot. for Appeal, at 15.)  Allied responds that

the issue is no longer an issue as to which there is substantial ground for difference

of opinion, and a leading bankruptcy treatise flatly states that a § 1113(e) order

need not be preceded by a motion to reject the collective bargaining agreement.

(Opp. to Mot. for Appeal, at 26.)  The Court agrees with Allied and finds there is

not a substantial dispute that a debtor may obtain interim relief under § 1113(e),

even absent an application to reject a collective bargaining agreement.

There is ample authority supporting the conclusion that an interim order under § 1113(e) may be brought without a pending application to reject.  First, the plain language of § 1113(e) does not limit interim relief only to circumstances where an application to reject has been filed.  The only requirement enumerated in the statute is that it be brought "during a period when the collective bargaining agreement continues in effect."  11 U.S.C. § 1113(e).  That requirement was met here.

Case law supports this conclusion.  In <u>Beckley Coal Mining</u>, the court considered the precise issue of whether relief under § 1113(e) may be sought without a pending application for rejection of the CBA.  <u>Beckley Coal Mining.</u> at 98 B.R. 690.  The court reasoned: "The purpose of subsection (e) is to allow the Court sufficient flexibility to provide the debtor in possession temporary economic relief under certain circumstances in order to carry out the objective of Chapter 11; that is, to preserve the business, if possible, for the benefit of all. . . . [T]o limit the time at which the interim relief . . . becomes available to sometime after the application for rejection would thwart the purpose of this subsection."  <u>Id.</u> at 694.

The <u>Beckley Coal Mining</u> court explained that requiring the debtor to engage in the various prerequisites for filing an application to reject under § 1113 "would

-20-

not carry out the purpose of subsection (e).  Rather than providing a court

flexibility to fashion emergency relief, it requires the debtor to follow a rigid and

prolonged process which cannot be adapted to meet his individual needs."  Id.; see

also In re Salt Creek Freightways, 46 B.R. 347 (Bank. D. Wyo. 1985) (rejecting the

argument that § 1113(e) relief may only be sought after an unsuccessful application

for rejection has been filed and opining that nothing in the statute "indicates that it is

intended to mean something more specific that any one of the various times in

which a collective bargaining agreement remains in effect"); In re Evans Prods. Co.,

55 B.R. 231, 234 (Bank. S.D. Fla. 1985) (allowing § 1113(e) relief where the debtor

had not initiated any effort to reject its agreements with the Union).

A leading treatise on bankruptcy law unequivocally states that an application

to reject is not required to obtain interim relief under § 1113(e):

> Interim relief may be requested at any time as long as the
> collective bargaining agreement, which is the subject of
> the proposed modification or rejection, continues in
> effect.  While interim relief is often sought while an
> application for modification or rejection under section
> 1113(c) is pending, there is no requirement that a request
> for interim relief be preceded by a motion under section
> 1113(c).

Lawrence P. King, 7 Collier on Bankruptcy ¶ 1113[04][1], p. 1113-28 (15th ed. rev.).

In support of its argument that there is at least a substantial ground for difference of opinion on whether or not a § 1113(e) interim order may be granted where an application to reject has not been filed, Appellants cite a string of cases, none of which support its argument.  In Truck Drivers Local 807, Int'l Bd. of Teamsters v. Carey Transp. Inc., 816 F.2d 82 (2nd Cir. 1987), the court did state that "[i]nterim relief is available only until the hearing process is completed–normally within two months."  816 F.2d at 89.  The court, however, was deciding the meaning of "necessary" as used in § 1113(b)(1)(A) and did not address the specific issue before the Court.

In In re Hoffman Bros. Packing, 173 B.R. 177, 185 (BAP 9th Cir. 1994), seven weeks after bankruptcy, the debtor filed a motion in bankruptcy court pursuant to 11 U.S.C. § 1113(e) requesting emergency interim modification of its collective bargaining agreements.  It asked the court to authorize, *nunc pro tunc* as of its filing date, its unilateral breach of certain provisions of the collective bargaining agreement.  Id. at 180.  Finding that an actual emergency existed, the court granted the requested relief, modifying the terms of the collective bargaining

-22-

agreement as of the date of filing of the bankruptcy petition.  The parties did not

dispute that the petitioner's interim modifications to the collective bargaining

agreement were essential to the continuation of the debtor's business, and the court

affirmed the bankruptcy court's modification order.  On appeal, the union's

primary objection to the § 1113(e) order was the order's retroactive effect -- not

whether the relief could be granted absent a pending application to reject the

collective bargaining agreement.

The appeals court reasoned that § 1113(e) of notice and hearing requirement

would be nullified if retroactive modification were permitted.  It stated: "Section

1113(e) is a provision which allows, in the case of emergency, a temporary

departure from the regular course of the Code as prescribed by § 1113(b) and (c).

Any interim remedy provided by § 1113(e) is subject to the requirement of an

application for rejection as set out in subsections (b) and (c) and an order thereon.

Thus whatever changes may result can only be 'interim'" Id. at 185.  The court

reasoned that "policy considerations relating to § 1113 should not permit a debtor,

unilaterally and without prior authority of the court, to seek condonation of its

unauthorized post-petition breach" and thus held that "the retroactive aspect of the

interim order must be reversed." Id.  The court did not hold that an interim order

under § 1113(e) may never be brought without an application pending to reject the collective bargaining agreement.

Manor Oak Skilled Nursing Facilities, 201 B.R. 348, 349 (Bank. W.D.N.Y. 1996), also relied upon by Appellants, similarly does not support their proposition. In Manor Oak, the Debtor, before filing for bankruptcy, owed more than $ 80,000 to a union-related fund pursuant to three collective bargaining agreements. The Debtor neither assumed nor rejected the collective bargaining agreements under 11 U.S.C. § 1113. Instead, it filed a proposed plan of reorganization contemplating the sale of its property and proposing to treat the pre-petition arrears as if the collective bargaining agreements had been rejected. The Plan also expressly stated that the collective bargaining agreements would remain in effect until the property was sold, but would be rejected unless the buyer reached an agreement with the union. The debtor admitted it did not want to assume the collective bargaining agreements because that would require the "cure" of the pre-petition arrearages, which would diminish its net recovery from the sale of its property. The union sought an order compelling the debtor to assume or reject the collective bargaining agreements.

The debtor argued that the authority of the Court to authorize interim changes in the Collective bargaining agreements under § 1113(e) permitted it to allow the debtor's proposed modification. The bankruptcy court disagreed. The court initially noted that the debtor could not explain why its proposed modification met the requirements for relief under § 1113(e). The court stated: "§ 1113(e) permits only such 'interim' modifications as are not in derogation of the purposes of § 1113 and of the procedures provided by § 1113 which must be utilized when the debtor is not going to cure arrearages under a collective bargaining agreement and therefore proposes to reject the agreements." Id. at 350. The court held that binding the union to a plan "which does not propose prompt cure of the arrears . . . is not the kind of interim modification contemplated by § 1113(e)." It held that the potential diminution in value of the debtor's assets is not sufficient to meet the requirements for interim relief under § 1113(e). The Court held that all aspects of a collective bargaining agreement remain in effect and binding until rejection occurs, including the duty to cure pre-petition arrears or suffer the consequences. It ordered the debtor within 30 days to either move to assume or to reject the collective bargaining agreement or amend its plan to provide for either assumption

or rejection.  Manor Oak's holding does not support Appellants' proposition that a § 1113(e) order may never be entered without an application to reject.

Another case cited by Appellants, In re Russell Transfer, 48 B.R. 241, 243-44 (Bankr. W.D. Va. 1985), also does not provide clear support for the Teamsters' position.  In deciding that the requirements for a § 1113(e) motion were met, the In re Russell Transfer court held that "Section 1113(e) was enacted as an emergency stopgap measure pending proceedings in the rejection process.  It specifically provides that implementing this sub-section in no wise [sic] moots the requirement for the rejection process.  A reading of § 1113(e) clearly indicates a Congressional intent that relief under this sub-section shall be granted only as a means to avoid irreparable damage to the estate . . . ."  Id.  Although the court's statement appears to assume that an application for rejection will be pending when a debtor files a motion under § 1113(e), it did not hold that interim motions may not be filed absent an application to reject the collective bargaining agreement.

Appellants also cite In re Ionosphere Clubs, 139 B.R. 772 (S.D.N.Y. 1992) for its argument that courts have held that § 1113(e) relief cannot be obtained without a pending application to object.  As discussed previously, however, that case expressly refused to decide this issue and limited its holding to the facts

-26-

before it.  It held:  "without deciding whether § 1113(e) relief should ever be available prior to the filing of an application for permanent relief, the Court concludes that under the circumstances of this case, the granting of interim relief in the absence of [such] an application . . . was not warranted."  Id. at 780.

At best, Appellants' cited authority consists of several unpersuasive passing comments in dicta.  Each case involves unique issues completely different from the facts before the Court.  None of the cases cited by the Teamsters supports its proposition that an interim order under § 1113(e) is prohibited absent an application for rejection.

Appellants next argue that Congress intended that § 1113(e) motions could not be filed without a pending application to reject a collective bargaining agreement.  Appellants cite to portions of legislative history of 11 U.S.C. § 1113.  As both parties acknowledge, however, no committee reports were issued regarding the enactment of § 1113–comments from the floor are all that is available.  The Court does not find the comments persuasive.[7]

_____

[7]  The legislative history of § 1113 has been discussed by other courts:  "The legislative history of section 1113 . . . consists of little more than self-serving statements by opposing partisans.  No committee reports were issued on the statute, apparently because no agreement on content could be reached.  When

-27-

The Court concludes there is no substantial grounds for a difference of

opinion on whether a motion to reject the collective bargaining agreement must be

pending as a prerequisite to allowing interim relief under § 1113(e).[8]  Appellants

─────────────────────

legislative history is scant and capable of differing interpretations, we are hesitant to
consider it a reliable indicator of Congressional intent.  We therefore confine our
analysis largely to the words of the statute itself, taking into account other judicial
interpretations." In re Mile High Metal Sys., Inc., 899 F.2d 887, 890 (10th Cir.
1990).  Furthermore, the Supreme Court in Garcia v. United States, 469 U.S.70
(1984), stated:

> In surveying legislative history we have repeatedly stated
> that the authoritative source for finding the Legislature's
> intent lies in the Committee Reports on the bill, which
> represent the considered and collective understanding of
> those Congressmen involved in drafting and studying
> proposed legislation.  We have eschewed reliance on the
> passing comments of one Member, and casual statements
> from the floor debates.

Garcia, 469 U.S. at 76.  The Court therefore does not consider the legislative
statements cited by Appellants as authority that § 1113(e) relief may not be
obtained without a pending application to reject a collective bargaining agreement.

[8]  The Court further finds that the third requirement for an interlocutory
appeal is also not met.  The third requirement is satisfied if the "resolution of a
controlling legal question would serve to avoid a trial or otherwise substantially
shorten the litigation." McFarlin, 381 F.3d at 1259.  In this matter, the Teamsters
appeal an interim order allowing relief for a period of 60 days.  There is no
evidence before the Court that further changes to the collective bargaining
agreement have been made.  Because the interim order only affects a 60 day period,
a resolution of this issue would not advance the resolution of the bankruptcy
process or otherwise affect the proceedings in the bankruptcy court.

have failed to meet the second requirement for granting an interlocutory appeal, and

the Court declines to grant an interlocutory appeal on this issue.

      e.    *Other Issues for Appeal*

      The Teamsters argue that they should be permitted to appeal the bankruptcy

court's decision to allow the DIP lender's agent to appear at the 1113(b) hearing.

Allied responds that the DIP lenders did not seek to intervene as a full party so as

to be able to present evidence or appeal, but simply sought limited participatory

rights to state the DIP lenders' position on certain issues.  (Opp. to Mot. for

Appeal, at 27.)

      This is not grounds for an appeal.  The Teamsters do not contest that

counsel for the DIP lenders was recognized to make a statement *after the close of*

*evidence*.  The bankruptcy court explicitly stated: "It's not that I'm relying on

anything he said because that was just his opinions.  That's not evidence."  (Id.)

      As discussed above, this court should only use its discretion to hear

interlocutory appeals on questions "which would be dispositive of the litigation"

and should not grant interlocutory appeals where there is a "mere question as to the

correctness of [a] ruling."  The bankruptcy court's decision to allow the DIP

lenders to provide limited input at the hearing does not qualify as a controlling

question of law as to which there is a substantial ground for difference of opinion which would materially advance the bankruptcy proceedings.

As their third basis for appeal, the Teamsters argue that the bankruptcy court improperly applied the standards for granting relief under § 1113(e).  They argue that Allied did not demonstrate, as required by § 1113(e), that the collective bargaining agreement actually caused its financial crisis and the relief it sought was the only solution to avoid its collapse.  (Mot. for Appeal, at 22.)  The Teamsters argue that the bankruptcy court's improper application of the statute effectively reversed the burden of proof under § 1113(e).  The Teamsters also complain that Allied's evidence was insufficient to make the showing required under § 1113(e) and that the bankruptcy court allowed Allied to choose to dishonor the collective bargaining agreement in favor of "subsidiz[ing] other Chapter 11 constituencies." (Id. at 24.)  They also argue that Allied's cash flow projections did not show that they were actually losing money because of the collective bargaining agreement. (Id. at 26.)

As discussed above, a "controlling question of law" means a "question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine." McFarlin, 381 F.3d at 1258.  It does not mean a question as to the

-30-

application of settled law to fact.  Id.  The Teamsters' complaints in this case concern the bankruptcy court's application of § 1113(e) to the specific facts of their case.  This is an inappropriate subject on which to grant an interlocutory appeal.

The Court does not find that any of the bases for appeal submitted by Appellants qualifies for interlocutory appeal.  Appellant's motion for appeal is therefore denied.

## III.   CONCLUSION

Accordingly,

Appellants Motion for Leave to Appeal [2] is **DENIED**.  The clerk is **DIRECTED** to **ADMINISTRATIVELY CLOSE** this case.


**SO ORDERED** this 9th day of February, 2007.



_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE